COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Humphreys and Senior Judge Annunziata
Argued at Richmond, Virginia


TAVARES LAMONT BROWN

                                                        MEMORANDUM OPINION[*] BY
v.        Record No. 0339-08-2                         JUDGE LARRY G. ELDER
                                                           JANUARY 13, 2009
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                            Bradley B. Cavedo, Judge

              (Paul F. Fantl, on briefs), for appellant.  Appellant submitting on
              briefs.

              Virginia B. Theisen, Senior Assistant Attorney General (Robert F.
              McDonnell, Attorney General, on brief), for appellee.


        Tavares Lamont Brown (appellant) appeals from his bench trial conviction for possessing

cocaine with an intent to distribute.  On appeal, he contends the trial court erroneously denied his

motion to suppress the cocaine because it was found in a search pursuant to a narcotics arrest for

which the officer lacked probable cause.  We agree that the officer lacked probable cause to

arrest appellant for possession of the cocaine found on the ground in a folded lottery slip.

Accordingly, we reverse appellant's conviction and remand for further proceedings if the

Commonwealth be so advised.

        On appeal of a ruling on a motion to suppress, we view the evidence in the light most

favorable to the prevailing party, here the Commonwealth, granting to the evidence all

reasonable inferences fairly deducible therefrom.  Commonwealth v. Grimstead, 12 Va. App.

1066, 1067, 407 S.E.2d 47, 48 (1991).  "[W]e are bound by the trial court's findings of historical

--------------------------------------------------------------------------------
[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc). We review *de novo* the trial court's application of defined legal standards, such as whether the police had reasonable suspicion or probable cause for a search or seizure. Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911, 920 (1996).

Appellant concedes Officer Warner had probable cause to issue him a summons for the open container violation and to frisk him for weapons based on his furtive hand gestures. He contends, however, that Officer Warner lacked reasonable suspicion to detain him further while he continued to investigate the narcotics offense and also lacked probable cause to arrest him for possessing narcotics. We hold the ongoing detention for further investigation was reasonable under the circumstances but that Officer Warner lacked probable cause to arrest appellant for possessing the cocaine found in the folded lottery slip on the ground.[1]

An officer may effect a Terry stop if he becomes aware of facts that "lead[ ] him reasonably to believe in light of his experience that criminal activity may be afoot" and that the person he detains is involved in it. Terry v. Ohio, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884, 20 L. Ed. 2d 889, 911 (1968). An officer who develops such reasonable suspicion concerning a person may stop that person "in order to identify him, to question him briefly, or to detain him briefly, while attempting to obtain additional information" in order to confirm or dispel his suspicions. Hayes v. Florida, 470 U.S. 811, 816, 105 S. Ct. 1643, 1647, 84 L. Ed. 2d 705, 711 (1985). The Supreme Court has not adopted any "outside time limitation for a permissible Terry

---

[1] The Commonwealth did not argue that the search of appellant's person was legitimized by anything other than an arrest for possessing cocaine and, thus, the trial court was not called upon to determine whether Officer Warner may have had some other constitutionally permissible basis for arresting and searching him.

stop," United States v. Place, 462 U.S. 696, 709 & n.10, 103 S. Ct. 2637, 2646 & n.10, 77 L. Ed. 2d 110, 122 & n.10 (1983) (rejecting ninety-minute seizure of traveler's luggage at airport), and we have recognized, depending on the circumstances, that detentions of forty-five to seventy-five minutes may be reasonable, Limonja v. Commonwealth, 8 Va. App. 532, 543, 383 S.E.2d 476, 483 (1989) (en banc) (involving assessment of the length of a detention to await the arrival of a "narcotics dog").

"Probable cause [for arrest] exists where 'the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed" by the person arrested. Brinegar v. United States, 338 U.S. 160, 175-76, 69 S. Ct. 1302, 1310-11, 93 L. Ed. 1879, 1890 (1949) (quoting Carroll v. United States, 267 U.S. 132, 162, 45 S. Ct. 280, 288, 69 L. Ed. 543, 555 (1925)). Where the arrest is for possession of a controlled substance or other contraband, proximity to such a substance may be relevant in determining whether probable cause exists, but it is not controlling. See, e.g., Dodd v. Commonwealth, 50 Va. App. 301, 308, 649 S.E.2d 222, 225 (2007). Probable cause to arrest must exist exclusive of the incident search. Wright v. Commonwealth, 222 Va. 188, 278 S.E.2d 849 (1981).

When the factual basis for reasonable suspicion or probable cause is provided by an informer, the informer's (1) veracity, (2) reliability, and (3) basis of knowledge are "highly relevant" factors in the overall totality-of-the-circumstances analysis. Illinois v. Gates, 462 U.S. 213, 230, 233, 103 S. Ct. 2317, 2328, 2329, 76 L. Ed. 2d 527, 543, 545 (1983). "Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.'" Florida v. J.L., 529 U.S. 266, 270, 120 S. Ct.

- 3 -

1375, 1378, 146 L.Ed.2d 254, 260 (2000) (quoting Alabama v. White, 496 U.S. 325, 329, 110 S. Ct. 2412, 2415, 110 L. Ed. 2d 301, 308 (1990)) (citation omitted).  In order for "an anonymous tip . . . [to] exhibit[] 'sufficient indicia of reliability'" to provide probable cause for an arrest or search, it must be "suitably corroborated" by information sufficiently predictive so as to establish "the informer's knowledge or credibility." Id. at 270-71, 120 S. Ct. at 1378-79, 146 L. Ed. 2d at 260.  In order for a tip to provide reasonable suspicion or probable cause, the "tip [must] be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." Id. at 272, 120 S. Ct. at 1379, 146 L. Ed. 2d at 261.

Here, Officer Warner worked for a "street-level narcotics unit" that focused on the general area in which he stopped appellant.  He had personally made numerous arrests for narcotics within one-half block of that location, and he had had numerous previous encounters with appellant, whom he described as "a known narcotics dealer."  On the afternoon at issue, Officer Warner had received information from dispatch that two individuals were selling narcotics on "Addison Street at the bridge," a particular dead-end street in his unit's area.  After finding no one on the designated street, he observed appellant and another man standing about six feet apart on the eight-foot-wide ramp to the nearby pedestrian bridge that crossed the Downtown Expressway.  Both men "seemed to be in the same general area," but "they weren't communicating."  Appellant was holding an open container of alcohol, and the second man was urinating on the side of the ramp.  Based on the drinking and urinating in public (both misdemeanor offenses for which state law required release on a summons) and the suspicion of possible narcotics dealing, Officer Warner was justified in detaining appellant and the second man, Scott Pullen, to further investigate.  When appellant placed his hand behind his back and reached toward his rear pocket or waistline area, Officer Warner, whose backup officer had not yet arrived, was justified in handcuffing appellant, walking both men to his police vehicle, and

- 4 -

frisking them for weapons. Although the frisk of appellant revealed no weapons, drugs or other contraband, nothing in the record indicates the detention to that point had lasted more than a few minutes, and Officer Warner was justified in briefly detaining appellant further while he continued to investigate the drug distribution complaint. Based on Officer Warner's discovery on Pullen's person of the folded lottery slip containing ashes and his memory of seeing a similar slip in the middle of the ramp to the pedestrian bridge where he had first encountered the two men, Officer Warner was justified in having his backup officer continue the detention of both men while he walked back to retrieve the lottery slip.

Upon retrieving the lottery slip from the ground and discovering it contained crack cocaine and was folded in the same way as the lottery slip he had found on Pullen, Officer Warner may have had probable cause to arrest Pullen for possessing cocaine. Officer Warner may also have had reasonable suspicion to continue his detention of appellant for further questioning about his involvement with Pullen and the cocaine in the folded lottery slip. However, the evidence, viewed in the light most favorable to the Commonwealth, was not sufficient to provide Officer Warner with probable cause to arrest appellant for possessing the cocaine on the ground in the folded lottery slip.

The evidence, viewed in the light most favorable to the Commonwealth, provided only a suspicion that appellant and Pullen were companions or had had any contact with each other when Officer Warner first encountered them on what amounted to a public sidewalk between 5:00 and 6:00 p.m. on a Tuesday afternoon in October, when it was still light outside. The pedestrian bridge was one block from the Greater Richmond Transit bus terminal and adjacent to a Virginia Power building. The men were about six feet apart on the eight-foot-wide ramp to the pedestrian bridge when Officer Warner approached, and Officer Warner testified they "seemed to be in the same general area" but "weren't communicating." Warner had only the information

from dispatch that a tipster reported two individuals of unknown description were selling narcotics on "Addison Street at the bridge," which was near an area where Officer Warner had previously made several narcotics arrests. The record contained nothing indicating the police had any knowledge regarding the identity of the tipster, his reliability, or the source of his information, and the tip contained neither a description of the alleged drug dealers nor any predictive elements allowing the police to corroborate any of its content. Thus, the tip added little, if any, weight to the probable cause analysis.

Based on the tip and Officer Warner's knowledge that appellant was a "known drug dealer" in an area known for narcotics sales, appellant's presence on the ramp with Pullen, his furtive gestures during his encounter with Officer Warner, and the discovery of the cocaine in the folded lottery slip appearing to belong to Pullen were certainly suspicious, but they were insufficient to provide probable cause for his arrest. Because Officer Warner did not see appellant discard anything, nothing but suspicion connected appellant to the cocaine in the lottery slip folded like the similar slip found in the frisk of Pullen. Probable cause "must be based on more than speculation, suspicion, or surmise that a crime might be in progress." Alexander v. Commonwealth, 19 Va. App. 671, 674, 454 S.E.2d 39, 41 (1995). Thus, the trial court's ruling that the search of appellant was conducted pursuant to a valid arrest for possessing cocaine was erroneous.

### III.

For these reasons, we hold the trial court's denial of the motion to suppress was error. Accordingly, we reverse appellant's conviction and remand for further proceedings if the Commonwealth be so advised.

Reversed and remanded.